AETNA CASUALTY & SURETY
CO., Petitioner,

v.

J. Marshall SUMMAR, Jr., Respondent.

Supreme Court of Tennessee.

Jan. 17, 1977.

D. L. Lansden, Waller, Lansden, Dortch & Davis, Nashville, for Pinson & Phillips Ins. Agency.

W. A. Moody, Nashville, for Aetna Cas. & Sur. Co.

J. Murray Milliken, Joel M. Leeman, Gullett, Steele, Sanford, Robinson & Merritt, Nashville, for respondent.

## OPINION

COOPER, Chief Justice.

We granted certiorari in this case to review the holding of the Court of Appeals that Aetna Casualty and Surety Company was primarily liable for payment of the *full* damage caused by fire to two apartment buildings owned by respondent, J. Marshall Summar, Jr., and that Pinson and Phillips Insurance Agency, Inc., who placed the fire insurance coverage, was secondarily liable for payment of the fire loss.

In 1971 Mr. Summar purchased a multiperil insurance policy from the General Insurance Corporation of America (SAFECO), covering the Sterling Court Apartments in the amount of $235,000.00 for Building A and $265,000.00 on Building B for a term of three years. The policy, which was purchased through the Pinson and Phillips Insurance Agency, contained an eighty (80%) percent co-insurance clause, which provided that:

"The Company shall not be liable for a greater proportion of any loss to the property covered hereunder than the limit of liability under this co-insurance percentage applicable (specified in this policy) by the actual cash value of such property at the time of the loss."

During the time this policy was in force, SAFECO paid the full amount of a fire loss claim filed by Mr. Summar. The amount of the claim is not shown in the record, but the evidence does indicate that the claim would be classified as "small."

In 1973, Pinson and Phillips terminated its relationship with SAFECO. On its own initiative, Pinson and Phillips transferred the insurance coverage on the Sterling Court Apartments from SAFECO to Aetna Casualty and Surety Company, under a binder effective April 1, 1973.

There is evidence in the record that on April 3, 1973, a representative of Aetna informed Pinson and Phillips by telephone that the coverage on the buildings was substantially less than their replacement cost. Mr. Pinson indicated then that he would discuss the coverage with his insured after the Aetna policy was issued.

That night, or in the early morning hours of April 4, 1973, Building A was damaged by fire of incendiary origin. The amount of the damage was $6,731.28. Building B was damaged by fire on April 12, 1973, with that loss being fixed at $9,592.34. Following the fire, at the request of Aetna, Mr. Summar employed a guard to protect the premises against vandalism and further fires. The cost of this service was $897.00.

At the time of the fires, the actual cash value of Building A was $465,963.00 and Building B $446,396.00.

Aetna, in paying the fire losses, applied the co-insurance clause and computed its liability for damage to Building A to be $4,243.00, plus $101.00 lost rent, and for the damage to Building B to be $7,118.84, plus $48.85 lost rent. These amounts were paid to the plaintiff, with the parties agreeing that acceptance of the payment would not prejudice plaintiff in his efforts to recover the full amount of his fire loss. Aetna refused to pay for the guard service.

Mr. Summar filed suit in the Chancery Court of Davidson County seeking to compel Aetna, or, in the alternative, General Insurance Corporation of America (SAFECO), to pay the full damage caused by the two fires. As a further alternative remedy, Mr. Summar asked for a judgment against Pinson and Phillips Insurance Agency, Inc.,

for the difference, if any, between the amount ordered to be paid by the insurance companies and the actual loss sustained by plaintiff.

The chancellor concluded that Aetna's policy was in force and covered plaintiff's fire losses. The chancellor also concluded that Aetna had properly computed its liability to plaintiff under the co-insurance clause and had paid plaintiff the full amount due for the fire losses. The chancellor further concluded that plaintiff was entitled to recover the cost of the guard employed at the request of Aetna to protect the apartment buildings against vandalism and fire, and entered judgment in favor of the plaintiff for $897.00. The actions against SAFECO and Pinson and Phillips Insurance Agency, Inc., were dismissed.

The Court of Appeals, with one judge dissenting, reversed the decree of the chancellor and entered judgment for the amount of the fire loss "jointly against Aetna and Pinson and Phillips Insurance Agency, Inc., with interest from date of judgment below, but Aetna will be primarily liable for payment of the judgment." Plaintiff also was awarded a judgment against Aetna for the cost of the guard service. The judgment dismissing the action against SAFECO was affirmed.

In holding petitioners liable for payment of the entire fire loss, the majority of the Court of Appeals reasoned that:

"Plaintiff had had at least two losses which had been paid by Safeco within the two-year period covered by the Safeco policy, not on an 80% basis, but on a 100% basis. The relationship between the Plaintiff and Safeco was excellent. Safeco was satisfied with the valuation of the apartments. There is nothing in the record to indicate that Safeco would not have paid the two losses in question on 80% co-insurance on the values set out in Safeco's policy.

"On the other hand, when Pinson and Phillips decided to cease doing business with Safeco and turn all of its business to Aetna, Aetna indicated to Pinson and Phillips that it would not be satisfied

with the valuations on the two buildings with which Safeco was satisfied. Aetna gave notice to Pinson and Phillips that the amount of coverage should be increased on the two buildings. When Pinson and Phillips received this information from Aetna on April 3, 1973, Pinson and Phillips did not reject the increased coverage but Mr. Pinson told Aetna he would discuss the increased valuation of the buildings and the increased premium with Plaintiff Summar after the policy issued.

"Since neither Aetna nor Pinson and Phillips discussed the oral binder with Plaintiff, we find that Pinson and Phillips was, in fact, acting as agent for both Aetna and the Plaintiff.

"An insurance agent is under a duty to keep his principal fully informed of all material knowledge relative to the risk entrusted to him. *Couch on Insurance*, Section 25:41, Second Edition, 1968. He is liable for failure to obtain the coverage needed by the insured. *Routh v. Sanders*, (M.S.1946), 29 Tenn.App. 602, 199 S.W.2d 461.

"We will not impute bad faith either to Aetna or Pinsion and Phillips Insurance Agency, Inc. by inferring that they intended to write for Plaintiff a policy that would give him far less protection than he had with Safeco. Plaintiff expected to be 80% co-insured. *We hold that Aetna accepted 80% co-insurance coverage by oral binder subject only to future determination of the actual value of the apartments and the adjustment of the premium.*" (Emphasis supplied.)

■ In our opinion, the evidence does not support the holding of the Court of Appeals. To the contrary, as pointed out in the dissenting opinion in that court, the obvious intent in transferring plaintiff's insurance coverage from SAFECO to Aetna, "was to obtain the identical coverage from Aetna that had been afforded by SAFECO without any premium increase. This is exactly what Aetna has agreed to do and has done. [We] see no reason for the plaintiff to be given a totally unexpected, unpaid

for, unbargained for and undeserved windfall."

Citing the fact that SAFECO had paid a prior loss without resort to the 80% co-insurance clause, plaintiff argues that SAFECO would have paid the two April, 1973 fire losses in full and that, consequently, Aetna should be required to pay the losses in full. What SAFECO would or would not have done with respect to payment of the fire losses is speculative and is not made less so by the fact that SAFECO paid a small claim without resort to the 80% co-insurance clause. The SAFECO contract provided for payment of the losses in the same manner and in the same amount provided in the Aetna contract. Aetna made payment in accord with the contract, which is all that it was required to do.

■ Despite the fact that in changing companies, Pinson and Phillips secured insurance coverage for Mr. Summar's apartment buildings identical to that purchased by Mr. Summar from SAFECO, the majority of the Court of Appeals concluded that Pinson and Phillips breached a duty in not informing Mr. Summar of the increase in value of the apartment buildings and in not getting additional coverage for the property on being informed by Aetna as to the value of the buildings. We disagree with this conclusion under the facts of this case. This was not a situation where the insurance agent was employed to see that property is insured as was the case in *Routh v. Sanders*, 29 Tenn.App. 602, 199 S.W.2d 461 (1946). So far as the record shows, Pinson and Phillips did not have authority to secure other and additional coverage and to bind Mr. Summar to pay an additional premium. The original policy of insurance was purchased in 1971. Mr. Summar, who is experienced in the real estate field, knew the value of his apartments when he purchased the coverage. He knew that the apartments had increased in value since the insurance was purchased because of inflation, if not for other reasons. He knew the limits of his insurance coverage and was not in any way depending on Pinson and Phillips to keep the apartment buildings adequately insured. It is argued that having actual knowledge that the valuation of the apartments in the policy was not 80% of the actual cash value of the buildings, Pinson and Phillips was under obligation to so inform Mr. Summar. Under the circumstances, we do not think Pinson and Phillips was under such an obligation. And even if it were, we see no breach of duty in failing to notify Mr. Summar of the call from Aetna relative to valuation of the property before the property was damaged by fire. The call was not received until April 3rd, 1973, and the fire was that evening.

■ In its petition for certiorari, Aetna also questions the judgment awarding Mr. Summar $897.00 expended in hiring a security guard. As heretofore noted, this expense was incurred by Mr. Summar at the specific request of Aetna to protect the insured buildings against vandalism and fires. We agree with the chancellor and the Court of Appeals that the expense thus incurred is the responsibility of Aetna.

The judgment of the Court of Appeals is reversed and the decree of the Chancery Court is reinstated. Costs incident to the appeal are adjudged against Mr. Summar and his surety.

FONES, BROCK and HARBISON, JJ., concur.

HENRY, J., not participating.